IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRY ANDRESEN; IRINA ANDRESEN, | ) |
| | ) No. |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| HSBC BANK USA, N.A.; U.S. BANK, N.A.; SERVIS ONE, INC. d/b/a BSI FINANCIAL SERVICES; LIMOSA, LLC; SN SERVICING CORPORATION, | ) JURY TRIAL DEMANDED |
| | ) |
| Defendants. | ) |

## COMPLAINT

Now Come Plaintiffs TERRY ANDRESEN and IRINA ANDRESEN (the "Andresens" or "Plaintiffs"), by and through their undersigned counsel, and for their Complaint against Defendants HSBC Bank, USA, N.A., U.S. Bank, N.A., Service One, Inc. d/b/a BSI Financial Services, Limosa, LLC, and SN Servicing Corporation (collectively "Defendants"), state as follows:

## INTRODUCTION

In May, 2016, the Andresens entered into a permanent loan modification agreement with HSBC Bank. The Andresens made monthly payments, pursuant to the permanent modification agreement, until January, 2019 when mortgage servicer BSI Financial Services, without explanation, stopped accepting their payments. Instead of simply fixing the apparent error in the subject loan file, Defendants, and other related entities, transferred the subject mortgage and its servicing rights to successors like a hot potato, frustrating the Andresens' and their undersigned counsel's efforts to resolve this matter amicably. As a result of Defendants' conduct, the

1

Andresens have been left with no choice but to file this Complaint to obtain the appropriate relief and damages.

## JURISDICTION AND VENUE

1. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

2. Alternatively, this Court has subject matter jurisdiction over Plaintiff's Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") claims pursuant to 28 U.S.C. § 1331 because such claims arise under the laws of the United States.

3. Given the interrelated nature of Defendants' mortgage servicing and debt collection conduct involving Plaintiffs' mortgage account, this Court should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims.

4. This Court has personal jurisdiction over Defendants, because they do business in the State of Illinois and a substantial part of the wrongful acts alleged in this Complaint were committed in Illinois.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because Plaintiffs reside in this district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here.

## PARTIES

6. Plaintiff Terry Andresen is a citizen of the State of Illinois and resides in Des Plaines, Illinois.

7. Plaintiff Irina Andresen is a citizen of the State of Illinois and resides in Des Plaines, Illinois.

8. Defendant HSBC Bank U.S.A., N.A. ("HSBC") is a national banking association with its principal place of business located in New York City.

9. Defendant U.S. Bank, N.A. ("U.S. Bank") is a national banking association with is principal place of business located in Minneapolis, Minnesota.

10. Defendant Servis One, Inc. d/b/a BSI Financial Services ("BSI") is a foreign corporation with its principal place of business located in Titusville, Pennsylvania.

11. Defendant Limosa, LLC is a foreign corporation with its principal place of business located in Seattle, Washington.

12. Defendant SN Servicing Corporation is a foreign corporation with its principal place of business located in Alaska.

## FACTS

13. Due to a loss of income, the Andresens fell behind on their mortgage payments and HSBC Bank USA, N.A. filed a foreclosure action against them in 2012, captioned *HSBC Bank USA, N.A. v. Andresen, et al.*, 12 CH 21545 (Cook Co.).

14. While the foreclosure case was pending, the Andresens' income increased and they applied for a loan modification.

15. On or about October 14, 2015, HSBC offered a loan modification Trial Period Plan ("TPP") to the Andresens. See *October 14, 2015 Trial Period Plan Offer*, attached hereto as Exhibit A.

16. The Andresens accepted the TPP and made the required payments.

17. Accordingly, in or about May, 2016, HSCB offered a permanent loan modification (the "Agreement").

18. The Andresens executed the Agreement and returned it to HSBC.[1]

19. The terms of the Agreement included:

    a) A 2% interest rate;

    b) A monthly principal and interest payment of $501.42;

    c) A total monthly payment, including escrow, of $913.72; and

    d) At that time, the unpaid principal balance of the subject mortgage loan was approximately $165,000.00

20. As a result of the Agreement, on June 9, 2016, HSBC, through counsel, filed a Voluntary Motion to Dismiss the then-pending foreclosure action "due to a loan modification." See *June 9, 2016 Motion to Dismiss*, attached hereto as Exhibit B.

21. On June 13, 2016, the Dismissal Order was entered. See *June 13, 2016 Dismissal Order*, attached hereto as Exhibit C.

22. The Andresens continued to make the monthly payments, pursuant to the Agreement, to HSBC.

23. On or about November 28, 2016, the subject mortgage was assigned from HSBC to Nationstar Mortgage, LLC ("Nationstar").

24. At or about that time, the servicing rights of the subject mortgage were also transferred to Nationstar.

25. The Andersens proceeded to make the monthly mortgage payments, pursuant to the Agreement, to Nationstar, and then Mr. Cooper after Nationstar rebranded itself in or about October, 2017.

---

[1] The Andresens sent the original copy of the Agreement to HSBC and did not keep a copy of it, because they did not expect to have to later prove that they accepted the offer. Therefore, the Agreement is in Defendants' possession and control.

26. On or about May 17, 2018, the subject mortgage was assigned from Nationstar to U.S. Bank Trust, N.A., as trustee of the Bungalow Series III Trust.

27. At or about that time, the servicing rights of the subject mortgage were transferred to BSI Financial Services ("BSI").

28. The Andresens proceeded to make the monthly payments, pursuant to the Agreement, to BSI.

29. After making about 30 (thirty) monthly payments pursuant to the Agreement, in January, 2019, BSI inexplicably returned the Andresens' payment.

30. The Andresens continued to try to make their payments and BSI returned, or refused to accept, them.

31. The Andresens attempted to obtain an explanation as to why the payments were not being accepted, but BSI would not provide one.

32. Instead fixing the error or at least providing an explanation, BSI told the Andresens that they must apply for a loan modification to keep the property.

33. The Andresens applied for a loan modification, but were denied due to "missing documentation," despite providing all requested documents.

34. U.S. Bank filed a new foreclosure action against the Andresens on August 7, 2019, *U.S. Bank Trust National Association as Trustee of Cabana Series III Trust v. Andresen, et al.*, 19 CH 9128 (Cook Co.).

35. The Andersens were forced to retain the undersigned counsel to represent them in the matter.

36. In January, 2020, the undersigned spoke to foreclosure counsel for U.S. Bank about the Agreement and his client's failure comply with its terms.

37. Foreclosure counsel assured the undersigned that he would speak to his client and this problem could be resolved without litigation.

38. U.S. Bank and BSI were aware of the Agreement and the failure to comply with its terms.

39. Instead of resolving the problem, on or about January 29, 2020, U.S. Bank assigned the subject mortgage to Atlantica, LLC.

40. At or about that time, the servicing rights of the subject loan were transferred from BSI to Land Home Financial Services ("LHFS").

41. Foreclosure counsel advised that the parties would have to wait for LHFS to receive the loan file to discuss a voluntary resolution.

42. Through conversations between counsel and state court pleadings, Atlantica, LLC and LHFS were aware of the Agreement and the failure to comply with its terms.

43. Instead of resolving the problem, on or about June 10, 2020, Atlantica, LLC assigned the subject mortgage to Lycaste, LLC.

44. At or about that time, the servicing rights of the subject mortgage were transferred from LHFS to SN Servicing Corporation ("SNSC").

45. Through conversations between counsel and state court pleadings, Lycaste, LLC and SNSC were aware of the Agreement and the failure to comply with its terms.

46. Instead of resolving the problem, on or about November 24, 2020, Lycaste, LLC assigned the subject mortgage to Alaska Louisiana Partners.

47. On January 12, 2021, the state court foreclosure case was dismissed for want of prosecution, due to the plaintiff's repeated failures to respond to the Andresens' Motion to Dismiss (based on the breach of the Agreement and lack of default) and to proceed with the foreclosure.

48. Through conversations between counsel and state court pleadings, Alaska Louisiana Partners was aware of the Agreement and the failure to comply with its terms.

49. Instead of resolving the problem, on or about January 27, 2021, Alaska Louisiana Partners assigned the subject mortgage to Argolica, LLC.

50. Through conversations between counsel and state court pleadings, Argolica, LLC was aware of the Agreement and the failure to comply with its terms.

51. Instead of resolving the problem, on or about February 3, 2021, Argolica, LLC assigned the subject mortgage to Limosa, LLC ("Limosa").

52. In effort to get this matter behind them and resume making mortgage payments, on April 29, 2021, the Andresens reluctantly submitted an application for a loan modification. See *Andresens' April 29, 2021 Loss Mitigation Packet,* attached hereto as Exhibit D.

53. The Andresens provided the address of the subject property as the mailing address. *Id.*

54. Additionally, the Andresens wrote "Contact through my attorney" in the section requesting their contact information. *Id.*

55. SNSC knew that the Andresens were represented by an attorney.

56. On or about May 24, 2021, SNSC mailed a Loan Modification Trial Period Plan Offer. See *May 24, 2021 Loan Modification Trial Period Plan Offer*, attached hereto as Exhibit E.

57. However, the offer was mailed to an address that was not the subject property address/mailing address provided on the Andresens' application, and it was not mailed to the Andresens' undersigned counsel. *Id.*

58. Additionally, the terms of the May 24, 2021 offer included:

    a) A 6% interest rate;

    b) A monthly principal and interest payment of $1428.00;

    c) A total monthly payment, including escrow, of $1889.63; and

    d) An unpaid principal balance of approximately $238,000.00

*Id.*

59. Thus, the terms of the May 24, 2021 Trial Period Plan offer were quite different than those of the May 2016 Agreement in that:

    e) The interest was three times higher;

    f) The monthly principal and interest payment was close to three times higher;

    g) The total monthly payment, including escrow, was over twice as much; and

    h) The unpaid principal balance was approximately $40,000.00 higher

60. In response to the offer, the undersigned asked foreclosure counsel if Limosa/SNSC could do anything to lower the interest rate or payment amount.

61. Foreclosure counsel responded that "they cannot."

62. As of the filing of this Complaint, Limosa, LLC's Motion to Vacate the Dismissal for Want of Prosecution and Substitute Party Plaintiff in the state court foreclosure proceeding has not been granted.

## COUNT I – BREACH OF CONTRACT

### *As to All Defendants*

63. The Andresens repeat and reallaged pagraphs 1-62 as if fully set forth herein.

64. In 2016, HSBC offered the Andresens a permanent loan modification of their mortgage loan.

65. The offer consisted of specific terms. See ¶ 7, *supra*.

66. The Andersens accepted the offer by signing the Agreement, returning it to HSBC, and making the payments required by the Agreement.

67. The Andresens' consideration was the monthly payments.

68. HSBC's consideration was dismissing the pending foreclosure case and allowing the Andresens to stay in their home.

69. Thus, a contract was formed between HSBC and the Andresens.

70. HSBC breached the terms of the Agreement by failing or refusing to properly apply the Andresens' monthly payments and alleging default.

71. The Agreement was binding on all successors and assigns of HSBC.

72. U.S. Bank breached the Agreement by failing or refusing to properly apply the terms of the Agreement to the subject mortgage and alleging default.

73. BSI breached the Agreement by failing or refusing to properly apply the terms of the Agreement to the subject mortgage and alleging default.

74. Limosa, LLC breached, and continues to breach, the Agreement by failing or refusing to properly apply the terms of the Agreement to the subject mortgage and alleging default.

75. SNSC breached the Agreement by failing or refusing to properly apply the terms of the Agreement to the subject mortgage and alleging default.

76. As an actual and proximate result of the breach of contract, the Andresens have suffered damages in the form of, *inter alia*: (1) about 30 months of monthly payments for a mortgage that apparently stayed in default; (2) lost time, emotional distress, and aggravation over the last two and a half years; (3) attorney's fees for defending a wrongful foreclosure; (4) a wrongfully inflated mortgage loan balance due to improperly-applied payments, wrongful interest and fees, and foreclosure counsel's attorneys' fees; and (5) wrongfully negative credit reporting.

WHEREFORE, the Andresens respectfully pray this Honorable Court to enter judgment in their favor and against Defendants and to award:

    a) Specific performance of the May 2016 Permanent Loan Modification Agreement;

    b) Actual damages;

c) Costs of this action; and

d) Any and all additional relief this Court deems reasonable and just.

## COUNT II – PROMISSORY ESTOPPEL

### *As to Defendant HSBC*

77. The Andresens repeat and reallege paragraphs 1-62 as if fully set forth herein.

78. Under Illinois law, promissory estoppel is an offensive, equitable cause of action. *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 524, 528 (Ill. 2009).

79. To establish a claim of promissory estoppel, the plaintiff must prove that (1) the defendant made an unambiguous promise to the plaintiff; (2) the plaintiff relied on such promise; (3) the plaintiff's reliance was expected and foreseeable by the defendant; and (4) the plaintiff relied on the promise to her detriment. *Newton Tractor Sales,* 906 N.E.2d at 523-24 (citing *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 309-10, 565 N.E.2d 990 (Il. 1990)).

80. HSBC unambiguously promised to the Andresens that the subject mortgage loan would be modified if the Andresens accepted the offer and made the requisite monthly payments.

81. The Andresens relied on HSBC's promise by signing the Agreement and making the requisite monthly payments.

82. The Andresens' reliance was expected and foreseeable by HSBC and would be expected and foreseeable in any mortgage lender-homeowner relationship.

83. The Andresens' reliance was reasonable and would be reasonable for any homeowner in default.

84. The Andresens relied on HSBC's promise to their detriment, because they made 30 monthly payments in response to the promise, only to end up back in foreclosure for a wrongfully-alleged default.

85. As a direct and proximate result of HSBC's conduct, the Andresens have been damaged in the form of, *inter alia*: (1) about 30 months of monthly payments for a mortgage that apparently stayed in default; (2) lost time, emotional distress, and aggravation over the last two and a half years; (3) attorney's fees for defending a wrongful foreclosure; (4) a wrongfully inflated mortgage loan balance due to improperly-applied payments, wrongful interest and fees, and foreclosure counsel's attorneys' fees; and (5) wrongfully negative credit reporting.

WHEREFORE, the Andresens respectfully pray this Honorable Court to enter judgment in their favor and against Defendant HSBC and to award:

a) Specific performance of the terms of the May 2016 Permanent Loan Modification Agreement;

b) Actual damages; and

c) Any and all additional relief this Court deems reasonable and just.

### COUNT III – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS § 505/1, *et seq.*

*As to All Defendants*

86. The Andresens repeat and reallege paragraphs 1-62, as if fully set forth herein.

87. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") forbids unfair or deceptive conduct in the course of commerce, and states in relevant part:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with

intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act.

815 ILCS 505/2.

88. The Andresens are "consumers," as that term is defined by the ICFA.

89. Defendants' acts and omissions occurred in the course of trade and commerce.

90. The terms "unfair" and "deceptive," as used in the ICFA, are disjunctive, not conjunctive; in other words, a practice may violate the prohibition against unfairness while not violating the prohibition against deception, and vice-versa.

### *Unfair Conduct*

91. In determining whether a given course of conduct or act is unfair under the ICFA, consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

92. The published statement of factors considered by the Federal Trade Commission in measuring unfairness are: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers. See also *Robinson v. Toyota Motor Credit*, 201 Ill. 2d 403, 417-418, 775 N.E.2d 951, 961 (2002).

93. Courts may find unfairness even if the claim does not satisfy all three criteria. *Id*.

94. For example, a "practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id*.

95. A court addressing an ICFA Unfairness claim must consider whether the challenged practice,

"offends public policy as established by statutes, the common law or otherwise, or, in other words, whether it is at least within the penumbra of some established concept of unfairness." *Boyd v. U.S. Bank, N.A.*, No. 10 C 3367, 787 F. Supp. 2d 747, 752 (N.D. Ill. Apr. 12, 2011) (citing *Ekl v. Knecht*, 585 N.E.2d 156, 163 (2nd Dist. 1991).

96. Here, HSBC's unfair conduct includes:

   a) Failing or refusing to properly apply the terms of the Agreement to the subject mortgage loan;

   b) Declaring the loan to be in default, despite the Andresens' compliance with the Agreement;

   c) Assigning the subject mortgage to another entity without resolving the apparent problem in the subject loan file.

97. U.S. Bank's unfair conduct includes:

   a) Failing or refusing to properly apply the terms of the Agreement to the subject mortgage loan;

   b) Declaring the loan to be in default, despite the Andresens' compliance with the Agreement;

   c) Filing a foreclosure lawsuit against the Andresens, despite the Andresens' compliance with the Agreement;

   d) Assigning the subject mortgage to another entity without resolving the apparent problem in the loan file.

98. BSI's unfair conduct includes:

   a) Failing or refusing to properly apply the terms of the Agreement to the subject mortgage loan;

b) Failing or refusing to provide an answer as to why the Andresens' payments, pursuant to the Agreement, were being rejected;

c) Telling the Andresens' that they must submit a new loan modification application, despite the Andresens not defaulting on the Agreement;

d) Denying the Andresens' loan modification application due to "missing documents," despite receiving all of the requested documents;

e) Declaring the loan to be in default, despite the Andresens' compliance with the Agreement;

f) Transferring the servicing rights to another entity without resolving the apparent problem in the loan file.

99. Limosa's unfair conduct includes:

a) Failing or refusing to properly apply the terms of the Agreement to the subject mortgage loan;

b) Declaring the loan to be in default, despite the Andresens' compliance with the Agreement;

c) Offering a loan modification Trial Period Plan with unaffordable terms, including an interest rate three times that of the Agreement, monthly principal and interest payments three times that of the Agreement, and total monthly payments twice that of the Agreement.

100. SNSC's unfair conduct includes:

a) Failing or refusing to properly apply the terms of the Agreement to the subject mortgage loan;

    b) Declaring the loan to be in default, despite the Andresens' compliance with the Agreement;

    c) Offering a loan modification Trial Period Plan with unaffordable terms, including an interest rate three times that of the Agreement, monthly principal and interest payments three times that of the Agreement, and total monthly payments twice that of the Agreement.

101. The foregoing conduct offends public policy of fair dealing in consumer transaction and homeowners keeping their homes when they are granted and comply with permanent loan modification agreements.

102. The foregoing conduct is immoral, unethical, oppressive, and unscrupulous in that it has been done to increase the loan balance and keep the loan in default to maximize profits.

103. Mortgage servicers and foreclosure counsel are not financially motivated to cure defaults, even if doing so violates the law.

104. The foregoing conduct caused substantial injury to the Andresens, and would cause substantial injury to any homeowner, as it has resulted in *inter alia*: (1) lost time, emotional distress, and aggravation over the last two and a half years; (2) attorney's fees for defending a wrongful foreclosure; (3) a wrongfully inflated mortgage loan balance due to improperly-applied payments, wrongful interest and fees, and foreclosure counsel's attorneys' fees; and (4) wrongfully negative credit reporting.

    WHEREFORE, the Andresens respectfully pray this Honorable Court to enter judgment in their favor and against all Defendants and to award:

    a) Actual Damages;

    b) Punitive Damages;

c) Attorney's Fees and Costs; and

d) Any and all additional relief this Court deems reasonable and just.

## COUNT IV – VIOLATION OF THE
## FEDERAL DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692, *et seq.*

### *As to SN Servicing Corporation*

105. The Andresens repeat and reallege paragraphs 1-62 as if fully set forth herein.

106. The Federal Debt Collection Practices Act ("FDCPA"), at 15 U.S.C. § 1692c –

*Communication in connection with debt collection*, states, in relevant part:

(a) *Communication with the consumer generally*. Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt –

\*\*\*

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer…

15 U.S.C. § 1692c.

107. The Andresens are "consumers," as that term is defined by the FDCPA.

108. SNSC is a "debt collector," as that term is defined by the FDCPA.

109. SNSC knew that the Andresens were represented by an attorney.

110. The Andresens specifically requested, on their loan modification application, that SNSC communicate with them through counsel.

111. Despite the foregoing, on or about May 24, 2021, SNSC mailed a Trial Period Plan offer and communicated with the Andresens in connection with the collection of the subject debt.

WHEREFORE, the Andresens respectfully pray this Honorable Court to enter judgment in their favor and against Defendant SN Servicing Corporation and to award:

a) Actual damages;

b) Statutory damages;

c) Attorney's fees and costs; and

d) Any and all additional relief this Court deems reasonable and just.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

Respectfully submitted,

TERRY ANDRESEN and IRINA ANDRESEN

By and through his counsel,

*s/ Werner Gruber*
Werner Gruber, *Plaintiffs' Attorneys*

Werner W. Gruber
88 Cambridge Rd.
Grosse Pointe Farms, MI 48236
Phone: 708-420-2100
Fax: 312-268-7064
Email: werner@gruberlegal.com

## **DOCUMENT PRESERVATION DEMAND**

Plaintiffs hereby demands that Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiffs, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiffs, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiffs demand that Defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendants.

*s/ Werner Gruber*
Werner Gruber, *Plaintiffs' Attorney*